IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

Case No.: RWT 11-cv-815

BEATRICE BRAXTON,
Plaintiff

v.

DEUTSCHE BANK NATIONAL TRUST CO., et al,
Defendants

STATUS REPORT

1. I was hired at Glenmore Law Firm on May 27, 2011 and resigned on July 19, 2011, although I worked with clients for about two weeks after resigning in an effort to wrap up cases.

2. The principals at the time I was hired were Shiva Arati, Natalie Johnson, and Tawana Shephard.

3. It was my understanding that Mr. Arati was barred in Pennsylvania, Maryland and in the District of Columbia, that Ms. Johnson was barred in the District of Columbia, and that Ms. Sheppard was barred in Virginia and in the District of Columbia, and in the U.S. District Court for Maryland.

4. Mr. Arati and Ms. Sheppard were responsible for my work while I was at Glenmore. Mr. Arati left shortly after I joined the firm. From the time of Mr. Arati's departure, Ms. Sheppard was responsible for my work.

5. I informed Ms. Sheppard by email on July 19, 2011, that I was leaving because of questions that I had about the firm's ownership and work environment. The next day, she confirmed receipt of the email.  Shortly after that, we reviewed cases and discussed the Braxton case. I had drafted a response to the Motion to Dismiss but did not file it before leaving because it was not completed and edited. Ms. Sheppard told me that a new attorney would be taking the case, and it was my impression that the response would be filed either by her, or by the new attorney. I took a full time job after leaving Glenmore, but came in to meet with my replacement on weekends, but was not able to meet with him. I called several clients to inform them of my departure, and was told that they had been assigned another attorney and that they were happy with their representation, or in some cases, was not able to reach them.   To my recollection, I did not speak with Ms. Bowman after leaving.

6. When I came into the Braxton case, I spoke with representatives of Deutsch Bank on several occasions and also met with Ms. Braxton twice. It was my understanding that Ms. Braxton's primary goal was to obtain a favorable mortgage modification from the bank. I also spoke with her by phone about the case on several occasions. I neglected to file a response to the Motion to Dismiss because there was other work outstanding that was more time pressing, and I simply did not have time to do it. It was my understanding, however, that it would be filed before the deadline.  The Memorandum Opinion states that law clerks made several attempts to reach me. I never received any of these messages, although I did receive a telephone call from a law clerk in September. I told that person that I was no longer employed with the firm, and had not been employed there for some time. I did not withdraw the appearance I had entered because I entered it in the name of Glenmore. I thought that withdrawing the appearance would leave Ms. Braxton unrepresented when she had actually continued to have a contractual agreement with Glenmore. I had no idea that this was an issue until I received a letter in my post office box October 25, 2011.   On November 1, 2011, I contacted Carolyn Bowman, who was an office manager at Glenmore.  She provided me with contact information for Ms. Bowman.  I then spoke with Ms. Bowman, and she told me that she had received no contact from anybody at Glenmore.  I offered to file a response to the outstanding Motion to Dismiss on her behalf.  She told me that she wanted this done.  I am working on this response now, and plan to withdraw my appearance after the Motion is ruled on.


Respectfully Submitted,
/s/ E. Christopher Amos
E. Christopher Amos
Bar No. 17614
P.O. Box 1385
Laurel, MD 20725
(240)997-6985